UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL MAURICE McCALL,<br><br>    Petitioner,<br><br>    vs.<br><br>CONNIE GIBSON,<br><br>    Respondent. | No. 2:12-cv-2806-LKK-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a judgment of conviction entered against him on August 20, 2009, in the Sacramento County Superior Court on charges of attempted murder, discharging a firearm at an inhabited dwelling, and being a felon in possession of a firearm. He seeks federal habeas relief on the grounds that (1) his attempted murder conviction violates his right to due process because there was insufficient evidence of an intent to kill, and (2) his sentence for discharging a firearm at an inhabited dwelling violates his right to due process because the "multiple victim exception" does not apply, and pursuant to California Penal Code section 654, the trial court should have stayed the sentence. Upon careful consideration of the record and the applicable law, it is recommended that the application for habeas corpus relief be denied.

/////

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Noel Maurice McCall was convicted of attempted murder, discharging a firearm at an inhabited dwelling, and being a convicted felon in possession of a firearm. He was sentenced to prison.
>
> Defendant contends on appeal that (1) his conviction for attempted murder must be reversed because there is insufficient evidence of a specific intent to kill, and (2) pursuant to Penal Code section 654,[1] the trial court should have stayed his sentence for discharging a firearm at an inhabited dwelling.
>
> We conclude (1) sufficient evidence supports a finding of defendant's specific intent to kill for attempted murder, because even if defendant and his cohort primarily wanted to kill Detwon and/or Anthony, the jury could reasonably have found a concurrent intent to kill Ariyanna, considering the number of bullets fired at the group of four victims who stood in close proximity to one another; and (2) the multiple victim exception applies to preclude application of section 654.
>
> We will affirm the judgment.
>
> BACKGROUND
>
> On the afternoon of October 29, 2006, 18-year-old Ariyanna Bolts was visiting her friend Madiline George at Madiline's home on Cookingham Way in the Strawberry Manor neighborhood of Sacramento. Madiline's mother Charlesetta Hughes and a family friend named Crystal were also present.
>
> Ariyanna and Madiline went out to the front yard and talked with two young men named Detwon and Anthony. As the four were out front talking, a black sports utility vehicle (SUV) drove up. The driver engaged in an argument with one or more members of the group. When the SUV drove away, Ariyanna, Madiline, Detwon and Anthony remained outside talking.
>
> The SUV returned within an hour, carrying four or five men with guns. Defendant sat in the front passenger seat and began to

---

[1] Undesignated statutory references are to the Penal Code.

fire his gun at the group, who were standing within reaching distance of each other. Ariyanna ran to the side of a parked minivan but she was shot in the buttocks and the bullet lodged in her pelvis. The SUV stopped. Defendant and at least one other man got out and continued to shoot.

Charlesetta heard six gunshots. She and Crystal got down on the living room floor. When Charlesetta looked out the front window, she saw a man walking down the sidewalk shooting a gun. Charlesetta went to the door and called out to her daughter Madiline. Madiline and Ariyanna ran into the house. The gunmen got back in the SUV and the SUV left the area.

At trial, Officer Jeffrey Griggs testified that he contacted Ariyanna in Charlesetta's living room. Ariyanna was lying on her stomach. She was screaming, crying and "kind of freaking out . . . ." Ariyanna explained to the officer that she was standing in the front yard with friends when a black truck or SUV came around the corner. When the men inside started shooting, Ariyanna said she ran and was shot.

Officer Griggs contacted Ariyanna again at the hospital just before she went into surgery. Ariyanna was "semi[-]uncooperative" and very vague with her answers. Ariyanna explained again that she was on the front sidewalk with Madiline, Anthony and Detwon when a dark-colored SUV came around the corner with four Black men inside and that when they started shooting, she tried to run into the house. When the SUV stopped, a couple of the men got out and continued to shoot. Ariyanna explained that the shooters had been "feuding" with the guys from the "Manors" and she thought the shooters were chasing Anthony and Detwon.

At trial, Ariyanna was in custody for failing to appear in court. Ariyanna did not remember a black SUV or whether Anthony or Detwon had words with people in the SUV. She denied talking to the police while at the hospital, denied giving the police a statement at any time, and denied giving a statement to any hospital workers.

Madiline told the police that the front passenger of the SUV pointed his gun at her group and began firing at them. She also stated that the shooter was pointing the gun at Anthony and Detwon, speculating that the shooter would not point the gun at Ariyanna because she was a girl. Madiline heard gunshots before she ran and hit the ground. She could not recall how many gunshots. When the first shot was fired, Madiline saw Anthony duck for cover and run while Detwon jumped over the front yard

3

>gate. Defendant got out of the SUV and continued shooting, and a second man got out as well. Madiline vaguely remembered seeing a second gun. When defendant approached her, he was about two or three steps from her. He looked at her and she heard a "click" as he slid the slide back on his weapon. She closed her eyes. Defendant then went in another direction and continued to fire his weapon. Madiline heard her mother yell for her, and Madiline ran into the house. Madiline did not hear any more gunshots.
>
>Officers found 13 spent shell casings in the street in front of the Cookingham Way house. The casings came from two semi-automatic, magazine-fed weapons. Eight spent casings were from a .40 caliber weapon and five were from a .45 caliber weapon. There were bullet holes in the minivan's front passenger door and a passenger side window, along with damage to the back window, the windshield, and the driver's side window. Spent bullets were found in the minivan. A second car parked in the driveway was also damaged by bullets — a spent bullet was found in the driver's side door. Two bullet holes were found in the front of the Cookingham Way house, one to the right side of the front door and the other through a window and screen to the left of the door. A bullet fragment was found behind the refrigerator in the kitchen.

Resp't's Lodg. Doc. 4 at 2-4.

After the California Court of Appeal affirmed petitioner's judgment of conviction, he filed a petition for review in the California Supreme Court. Resp't's Lodg. Doc. 5. That petition was summarily denied. Resp't's Lodg. Doc. 6.

Petitioner then filed his federal habeas petition in this court. ECF No. 1 ("Pet."). Respondent filed an answer. ECF No. 10 ("Answer"). Petitioner did not file a traverse.

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's

/////

5

decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1   previous state court decision, this court may consider both decisions to ascertain the reasoning of
2   the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When
3   a federal claim has been presented to a state court and the state court has denied relief, it may be
4   presumed that the state court adjudicated the claim on the merits in the absence of any indication
5   or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This
6   presumption may be overcome by a showing "there is reason to think some other explanation for
7   the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,
8   803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims
9   but does not expressly address a federal claim, a federal habeas court must presume, subject to
10  rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___,
11  ___, 133 S.Ct. 1088, 1091 (2013).
12         Where the state court reaches a decision on the merits but provides no reasoning to
13  support its conclusion, a federal habeas court independently reviews the record to determine
14  whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*
15  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo
16  review of the constitutional issue, but rather, the only method by which we can determine whether
17  a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no
18  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no
19  reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.
20         When it is clear that a state court has not reached the merits of a petitioner's claim, the
21  deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court
22  must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099,
23  1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).
24  **III. Petitioner's Claims**
25        **A. Sufficiency of the Evidence**
26         In his first claim for federal habeas relief, petitioner contends that his right to due process
27  was violated because there was not substantial evidence to support the conviction for attempted
28  murder of Ariyanna Bolts. Petitioner contends that the "undisputed evidence" at trial

demonstrates that his intended victims were Detwon and Anthony. Pet. at 8. He relies on evidence showing that (1) the men in the SUV argued with the *men* standing on the corner, not the women, (2) testimony that the men in the SUV were "chasing" Detwon and Anthony, (3) testimony that the shooter did not point the gun at the women, but instead, at Detwon and Anthony, and (4) testimony that the shooter looked at Madiline George while she was on the ground, racked the gun, but then went the other way, in the direction that Anthony had run. *Id.*

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant contends there is no substantial evidence showing that he intended to kill Ariyanna or that he fired indiscriminately into the crowd where Ariyanna was standing. Thus, he asserts the evidence was constitutionally insufficient to support a finding of a specific intent to kill for attempted murder. We disagree.
>
> "'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' [Citations.] We apply an identical standard under the California Constitution. [Citation.] 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' [Citation.] The same standard also applies in cases in which the prosecution relies primarily on circumstantial evidence. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1175, italics omitted.)
>
> "Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623; *People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690.) Attempted murder requires express malice; a conscious disregard for life will not suffice to support a conviction for attempted murder. (*People v. Bland* (2002) 28 Cal.4th 313, 327-328.) A "person guilty of attempted murder as an aider and abettor must intend to kill." (*Lee*, *supra*, 31 Cal.4th at p. 624.) A defendant's intent to kill is rarely shown by direct evidence and may be inferred from the defendant's acts and all the circumstances. (*People v. Smith* (2005) 37 Cal.4th 733, 741 (*Smith*).)

8

> "[T]he act of purposefully firing a lethal weapon at another human being at close range, without legal excuse, generally gives rise to an inference that the shooter acted with express malice. That the shooter had no particular motive for shooting the victim is not dispositive, although . . . , where motive is shown, such evidence will usually be probative of proof of intent to kill. Nor is the circumstance that the bullet misses its mark or fails to prove lethal dispositive — the very act of firing a weapon '"in a manner that could have inflicted a mortal wound had the bullet been on target"' is sufficient to support an inference of intent to kill. [Citation.] Where attempted murder is the charged crime because the victim has survived the shooting, this principle takes on added significance. Finally, even if the shooting was not premeditated, with the shooter merely perceiving the victim as 'a momentary obstacle or annoyance,' the shooter's purposeful 'use of a lethal weapon with lethal force' against the victim, if otherwise legally unexcused, will itself give rise to an inference of intent to kill. [Citation.]" (*Smith*, *supra*, 37 Cal.4th at p. 742.)
>
> Moreover, "[t]he mental state required for attempted murder is the intent to kill a human being, not a *particular* human being." (*People v. Stone* (2009) 46 Cal.4th 131, 134, original italics.) A person who "indiscriminately fires a single shot at a group of persons with specific intent to kill *someone*, but without targeting any particular individual or individuals, . . . is guilty of a single count of attempted murder. [Citation.]" (*People v. Perez* (2010) 50 Cal.4th 222, 225, original italics; *Stone*, *supra*, 46 Cal.4th at pp. 140-141.)
>
> Here, defendant and another person fired multiple shots from semi-automatic weapons into a group of four people, then continued firing as the group fled. Officers found 13 shell casings at the scene. Even if defendant and his cohort primarily wanted to kill Detwon and/or Anthony, the jury could reasonably have found a concurrent intent to kill Ariyanna, considering the number of bullets fired at the group of four victims who stood in close proximity to one another. Sufficient evidence supports a finding of defendant's specific intent to kill for attempted murder.

Resp't's Lodg. Doc. 4 at 6-8.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, ___ U.S. ___, 132 S.Ct. 2, *4 (2011). Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16.

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, ___ U.S. ___, 132 S.Ct. 2060, 2064 (2012) ( per curiam ) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Because this case is governed by the AEDPA, this court owes a "double dose of deference" to the decision of the state court. *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th Cir. 2011), *cert. denied* ___ U.S. ___, 132 S.Ct. 2723 (2012)).

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence introduced at petitioner's trial to support the jury's verdict. As explained by the California Court of Appeal, there was more than enough evidence presented to the jury to support an inference that petitioner intended to kill when he repeatedly fired his weapon into the crowd of people and Ariyanna Bolts was shot. Petitioner's insistence that Detwon and Anthony were his

10

primary targets is beside the point. Petitioner does not and cannot demonstrate that the Court of Appeal's decision was an unreasonable application of, or contrary to, *Jackson v. Virginia*, 443 U.S. 307 (1979). Therefore, petitioner's claim must be denied.

**B. Penal Code Section 654**

Petitioner contends that "[t]his federal court should issue an order to show cause in order to settle the question [of] whether the multiple-victim exception to Penal Code section 654 is applicable to [his] conviction for shooting at an inhabited dwelling[,] where that conviction and the attempted murder conviction were based on . . . identical acts, the shooter had a single objective to shoot persons outside the house, and there was no evidence the shooter knew anyone was in the house." Pet. at 13. Stated another way, petitioner contends that the consecutive sentences imposed on counts one and two were improper under California Penal Code § 654 because the record allegedly demonstrated that these acts were "based on an indivisible course of conduct," which involved a single objective. *Id.* Petitioner argues that because of this and the Court of Appeal's failure to remand this matter back to the superior court for resentencing, his sentence violates the due process clause of the United States Constitution.[3] *Id.* at 15.

The California Court of Appeal rejected petitioner's argument, reasoning as follows:

> Defendant next contends that under section 654, the trial court should have stayed his sentence for discharging a firearm at an inhabited dwelling. We disagree, because the multiple victim exception applies.
>
> "A defendant cannot be punished multiple times for convictions that arise out of 'an indivisible transaction' and have a 'single intent and objective.' [Citation.]" (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336.) Here, the trial court did not expressly find that defendant had a separate intent and objective for discharging a firearm at an inhabited dwelling, and the evidence

---

[3] Respondent argues that petitioner's federal due process claim is unexhausted, noting that his petition for review filed in the California Supreme Court argues only that his sentence for shooting at an inhabited dwelling should have been stayed pursuant to section 654. Answer at 15; Resp't's Lodg. Doc. 5 at 1-2, 14-18. Assuming *arguendo* that petitioner's federal due process claim was not exhausted in state court, this court recommends that it be denied on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

>does not indicate a separate intent. But a defendant who entertains a single intent and objective may nonetheless be convicted and punished for each crime of violence committed against a different victim. (*People v. Centers* (1999) 73 Cal.App.4th 84, 99.) "An assailant's greater culpability for intending or risking harm to more than one person precludes application of section 654." (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1631 (*Felix*).)
>
>Defendant does not dispute that attempted murder and discharging a firearm at an inhabited dwelling are both crimes of violence. Instead, he claims the multiple victim exception does not apply because there is no evidence that he knew anyone was in the house when he fired the shots. But in convicting defendant of discharging a firearm at an inhabited dwelling, the jury necessarily found, in accordance with the jury instructions, that defendant's act of "intentionally discharg[ing] a firearm either directly at an inhabited dwelling house or in such close proximity to an inhabited dwelling house . . . show[ed] a conscious disregard for the probability that one or more bullets will strike the inhabited dwelling house or persons in or around it." "[W]here the crime of shooting at an inhabited residence is involved, a defendant need not be aware of the identity or number of people in the house to be punished separately for each victim." (*Felix*, supra, 172 Cal.App.4th at p. 1631.)
>
>Defendant risked harming people who might be in the house, and he showed a conscious disregard for the probable consequences. Four people were outside and two were in the house. The gunmen discharged their firearms 13 times, hitting Ariyanna in the front yard, putting two bullet holes near the front door, and sending one bullet fragment into the kitchen. On this record, the multiple victim exception applies. (*Felix*, *supra*, 172 Cal.App.4th at pp. 1630-1631; *see People v. Cruz* (1995) 38 Cal.App.4th 427, 430-435; *People v. Gutierrez* (1992) 10 Cal.App.4th 1729, 1736-1737.) The trial court did not err in declining to stay the sentence on count two under section 654.

Resp't's Lodg. Doc. 4 at 9-11.

Petitioner's claim of error based upon the alleged misapplication of California Penal Code § 654 does not provide the basis for federal habeas relief. Although petitioner contends that his sentence violates federal due process, his claim is essentially a challenge to the trial court's application of California Penal Code § 654. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (stating that a petitioner "may not transform a state-law issue into a federal one merely by asserting a violation of due process.").

As noted above, the federal writ is not available for alleged error in the application of state law, and habeas corpus cannot be utilized in federal court to try state issues *de novo*. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). Challenges to a state court's interpretation of state law are not cognizable in a federal habeas corpus proceeding. *See Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n.21 (1982) and *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) "a state court's interpretation of state law . . . binds a federal court sitting in federal habeas"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (federal habeas corpus relief does not lie for errors of state law).

Specifically, federal habeas corpus relief is unavailable for alleged errors in the interpretation or application of state sentencing laws by either a state trial court or appellate court. *Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993); *Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) (holding that whether assault with a deadly weapon qualifies as a "serious felony" under California's sentence enhancement provisions is a question of state sentencing law and does not state a federal constitutional claim). So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).

Finally, it is clear that the precise claim advanced by petitioner is not cognizable in these federal habeas proceedings. *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir.1989) (rejecting as not cognizable in a federal habeas proceeding a claim that the imposition multiple sentences for single act violated California Penal Code § 654); *see also Castillo v. Clark*, 610 F. Supp.2d 1084, 1119-20 (C.D. Cal. 2009) (rejecting as not cognizable a claim that the trial court had erred by staying instead of striking sentence enhancement under California Penal Code § 12022.53).

/////

**IV. Conclusion**

For all the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: July 28, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14